# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLI MAE THROCKMORTON TERBUSH, et al., | CASE NO. 1:02-cv-05509-SMS |
| Plaintiffs, | ORDER DISMISSING CASE FOR LACK OF JURISDICTION (F.R.Civ.P. 12(B)(1)) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | (Doc. 133) |

On December 8, 2005, this Court dismissed this case for lack of subject matter jurisdiction, holding that the actions of the National Park Service ("NPS") fell within the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. 2671-2680 ("FTCA"). Plaintiffs appealed to the Ninth Circuit Court of Appeals, which affirmed the dismissal of their failure-to-warn claims and those regarding the design and construction of the wastewater facilities but, finding the record insufficient to rule as a matter of law, reversed and remanded their maintenance claim. *Terbush v. United States*, 516 F.3d 1125, 1128 (2008). On October 30, 2009, following additional discovery, the Government again moved to dismiss this case for lack of subject matter jurisdiction or, in the alternative, for summary judgment.

The parties argued the Government's motion at 1:50 p.m. on January 15, 2010, in Courtroom 4 before the Honorable Sandra M. Snyder, U.S. Magistrate Judge.[1] Attorneys John

---

[1] This case was referred to the magistrate judge for all proceedings, including entry of final judgment. 28 U.S.C. § 636(c); F.R.Civ.P. 73(b); and Local Rule 73-301.

D. Barr and Estee Lewis, Barr & Mudford, LLP, appeared for Plaintiffs; Assistant United States Attorneys Kelli L. Taylor and Jason S. Ehrlinspiel appeared for Defendant. Prior to the hearing, the Court reviewed all papers in support and opposition of the motion. Following argument, the Court took the matter under advisement and now grants the Government's motion for dismissal.

### I. Background[2]

Plaintiffs' claims arise from the 1999 death of their decedent son, Peter Terbush, killed in a rockslide at Yosemite National Park while he and two companions were climbing rock cliffs below Glacier Point. Glacier Point is a tourist lookout located 3200 feet above Yosemite Valley. Facilities, including drinking water and a septic field for public restrooms, have existed on Glacier Point for many years.

Proceeding under the FTCA, the original complaint alleged that NPS negligently designed, constructed, operated, and maintained a wastewater management system on Glacier Point, exacerbating the natural exfoliation of the cliff's face and creating a dangerous condition that led to the rockfall that killed Peter Terbush. *Id.* Plaintiffs further alleged that NPS failed to warn park visitors of the unnatural and unseen hazard that the wastewater facility created. *Id.*

### II. Standards Governing Motions to Dismiss

A motion to dismiss pursuant to the discretionary function exception is tantamount to a motion to dismiss for lack of subject matter jurisdiction (F.R.Civ.P. 12(b)(1)). *McCarthy v. United States*, 850 F.2d 558, 560 (1988), *cert. denied*, 489 U.S. 1052 (1989). The existence of subject matter jurisdiction is a question of law. *Id.*

Except in removed cases, the court is presumed to lack jurisdiction, and the plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994); *Valdez v. United States*, 56 F.3d 1177 (9th Cir. 1995); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.

///

---

[2] Detailed factual background is presented in the prior order granting Defendant's motion to dismiss for lack of subject matter jurisdiction, filed December 8, 2005 (Doc. 67).

1989). The government bears the burden of establishing that the discretionary function exception applies. *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).

Under Rule 12(b)(1), challenges to jurisdiction may be based on the face of the complaint or on evidence beyond the complaint. When analyzing the complaint on its face, a court must accept all factual allegations as true and determine whether the allegations state a cognizable claim. *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Berkovitz v. United States*, 486 U.S. 531, 540 (1988).

When considering a Rule 12(b)(1) motion to dismiss, the court may review and weigh any evidence, including affidavits and testimony to resolve factual disputes about jurisdiction. *McCarthy*, 850 F.2d at 560. The court's considering evidence will not convert the dismissal motion to a motion for summary judgment. *Id.* No presumption of truth applies to a plaintiff's allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

Nonetheless, when the facts on which jurisdiction depends are also essential elements of the federal claim, a factual dispute is relevant both to federal jurisdiction and to the claim's merits. Courts may not resolve genuinely disputed facts when the resolution of jurisdiction requires resolution of disputed substantive facts. *Id.* In such cases, the court must assume that allegations in the complaint are true unless they are contradicted by undisputed facts in the record. The court may then dismiss if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Id.*.

Plaintiff bears the burden of producing sufficient evidence to establish a genuine issue of material fact regarding the applicability of the discretionary function exception, but the government bears the burden of proving that the discretionary function exception applies. *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998); *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995).

### III.    Mandate on Remand

The Ninth Circuit opinion described this case as "the intersection of the [NPS's] mandate to open federal park lands for recreational use, the scope of NPS's obligation to provide for

visitor safety, and the risks of mountain climbing." *Terbush*, 516 F.3d at 1131. Rejecting Plaintiffs' argument that NPS failed "'to implement mandated safety reviews' prior to the construction of facilities atop Glacier Point and ongoing maintenance after construction," the Circuit Court agreed with this Court's conclusion that NPS's policies did not constitute mandatory and specific directives to which NPS was required to adhere but that the policies were grounded in the policy regime established by the Organic Act, 16 U.S.C. § 1. *Terbush*, 516 F.3d at 1131. The Circuit Court determined that the 1988 Management Policies, which applied to all national parks, established a framework and provided direction for management decisions which, in the absence of mandatory language, called for the exercise of discretion by managers and superintendents in light of park-specific purposes and management direction. *Id.* at 1131-32.

The Court concluded that, in the absence of "mandatory and specific directives," NPS's locating and constructing the facilities on Glacier Point was a discretionary matter of balancing the policies of access, safety, and conservation. *Id.* at 1132. Thus, NPS's design and construction of the wastewater facilities was protected by the discretionary function exception.

The Court then turned its attention to Plaintiffs' contention that NPS negligently maintained the wastewater system on Glacier Point. *Id.* at 1132-1135. Agreeing with the Government's contentions that the absence of mandatory and specific policies removed from contention the first prong of the discretionary function analysis prescribed by *Berkovitz*, 486 U.S. at 536-37, the Ninth Circuit observed:

> When a specific course of action is not prescribed . . . an element of choice or judgment is likely involved in the decision or action. We then must consider "whether that judgment is of the kind that the discretionary function exception is designed to shield," namely, "only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536-37, 108 S.Ct. 1954. Public policy has been understood to include decisions "grounded in social, economic, or political policy." *Varig*, 467 U.S. at 814, 104 S.Ct. 2755. Even if the decision is an abuse of the discretion granted, the exception will apply.

*Terbush*, 516 F.3d at 1129 (citations omitted).

Finding the record insufficient, the Appellate Court declined to determine whether maintenance of the wastewater system was protected by the discretionary function exception:

///

4

> We cannot determine on the record before us whether the challenged maintenance at issue is maintenance that falls beyond policy judgments or whether it tends to the other end of the spectrum, which implicates broader mandates of NPS's policy regime. Merely establishing that the boundaries of maintenance are discretionary is not sufficient.

*Terbush*, 516 F.3d at 1134.

Accordingly, the only issue before this Court is whether NPS's maintenance of wastewater facilities on Glacier Point is routine maintenance or involves a discretionary application of policy shielding it from FTCA liability under the discretionary function exemption. The scope of a district court's jurisdiction on remand is limited to the specific issues remanded. *20th Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 883 (9th Cir. 2005), *cert. denied sub nom*, *Dastar Corp. v. Random House, Inc.*, 548 U.S. 919 (2006). Where the scope of remand is clear, a district court is bound to resolve only the issue remanded. *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172-73 (9th Cir. 2006). A district court has no power to expand the remand beyond the boundary imposed by the circuit court. *Id.*

### A. Contentions on Remand

On remand, Plaintiffs' contentions of inadequate maintenance focus on a single aspect of wastewater: overflows from the 300,000 gallon tank that stores potable water for use by Glacier Point visitors and the facilities and concessions that serve them. To the extent that Plaintiffs contend that these overflows constitute impermissible implementation of the water system's design, their contentions fall outside the bounds of the Ninth Circuit's remand.

The Government responds that the system is designed and constructed to accommodate overflows. The covered storage tank is 24 feet tall, with a six-inch-diameter overflow pipe at 22.4 feet. Excess water flows through additional piping and is discharged onto the ground surface about 30 feet from the tank.

NPS operates the system only during the tourist season, which runs approximately from May to October, depending on the weather. Park personnel can adjust or turn off the inflowing water and can allow the tank to overflow through the overflow pipe. Personnel make these decisions daily by balancing considerations of usage, weather, resources, and safety, including

concerns regarding degradation and contamination should the treated water be left stagnant. They record daily statistics of the operations on operator logs.

In 1999, park personnel began filling the tank on May 19 and reduced inflow after the contents reached 21 feet. Because water use was unusually low, the tank overflowed for eleven days until June 8, 1999, when operators again reduced the inflow. After June 8, 1999, water use matched production, and overflows became rare.

Relying on the opinion of their expert geologist, Dr. Chester "Skip" Watts, Plaintiffs contend that the overflows of drinking water entered cracks in the rock underlying Glacier Point and exacerbated the natural exfoliation of the cliffs below, causing the rockfall that killed Peter Terbush. Watts did not care what caused the overflows and candidly admitted at his deposition that he had no knowledge or opinions relating to the use, maintenance, management or design of a potable water system. Nonetheless, Plaintiffs argue that NPS's allowing the storage tank to overflow was negligent. They assert no deficiencies in NPA's repair or cleaning of the water storage tank. They do not allege that the water overflows resulted from any leaks, breaks, cracks, damage, disrepair, or failure to clean or sanitize. Instead, Plaintiffs contend that the Government maintains the water treatment facility on Glacier Point simply by continuing to locate it on Glacier Point. They offer no expert testimony regarding appropriate maintenance of the water storage tank or the relationship of the tank's periodic overflows to deficient maintenance.

NPS counters that defining maintenance in this way is no different from Plaintiffs' prior contention, dismissed and upheld on appeal, that the Government negligently designed the water facility in part by locating it on Glacier Point. The government points out that Watts has modified his statements to now express the same opinions which focused on construction and management before the 2005 dismissal and subsequent appeal, but to now attribute them to deficient maintenance.[3]

---

[3] Serving up Dr. Watts's prior statements with relish, the Government observes that, before the 2005 dismissal, Dr. Watts argued that you cannot change something simply by renaming it: "It is reported that in an argument with Secretary of War Stanton, Lincoln asked Stanton, 'Mr. Secretary, how many feet would a lamb have if we called its tail afoot?' Stanton replied, 'five feet.' Lincoln said, 'No, Mr. Secretary, it would have four. Calling its tail a foot does not make it a foot.'" (Doc. 133-2 at 16, quoting Watts declaration, June 2005, Doc. 49.)

6

This Court agrees that Plaintiffs' have failed to supplement the record to permit its maintenance claim to go forward.

### B. Discretionary Function Exception

An individual may bring an action against the United States only to the extent that the government has waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA grants federal courts subject matter jurisdiction over tort claims against the federal government for its employees' negligence under circumstances in which the government would be liable if it were a private party, under the laws applicable in the place where the tortuous act or omission occurred. 28 U.S.C.A. § 1346(b)(1). The discretionary function exception provides, however, that subject matter jurisdiction does not exist for "[a]ny claim based on an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Gaubert*, 499 U.S. at 322 (citations omitted). The discretionary function exception was intended to prevent judicial intervention in policy making that would require a court to second-guess an agency's political, social, or economic judgments. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984).

The Supreme Court has prescribed a two-part test to determine the applicability of the discretionary function exception. *Berkovitz*, 486 U.S. at 536-37. *See also Gaubert*, 499 U.S. at 322-25; *Whisnant*, 400 F.3d at 1180. First, a court must determine whether "the challenged action was a discretionary one–i.e., whether it was governed by a mandatory statute, policy, or regulation." *Whisnant*, 400 F.3d at 1180-81. An action that is not discretionary cannot be shielded under the discretionary function exception. *Id.* at 1181. "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to

policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level." *Gaubert*, 499 U.S. at 325. All agencies and employees exercising discretion are protected when they exercise discretion. *Varig*, 467 U.S. at 813. "[T]he nature of the conduct, rather than the status of the actor . . . governs whether the discretionary function exception applies in a given case." *Id.* Because no statute, policy or regulation governed maintenance of the wastewater system, the Ninth Circuit concluded that this prong did not remove Plaintiffs' allegations regarding maintenance from the discretionary function exception. Because the Circuit Court found the record inadequate to evaluate the second prong of the *Berkovitz* test, however, it remanded this issue, directing this Court to evaluate the second prong to determine whether maintenance of the wastewater system is the type of decision that Congress intended to protect, that is, whether NPS's maintenance decisions concerning the potable water storage tank are susceptible to social, economic or political policy analysis. *Varig*, 467 U.S. at 813.

### C. Analyzing the Second Prong

Proper construction of the test's second prong requires the presence of "governmental actions and decisions based on considerations of public policy," that is, a discretionary action or decision grounded in applicable public policy. *Gaubert*, 499 U.S. at 323, *quoting Berkovitz*, 486 U.S. at 537.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert*, 499 U.S. at 324-25.

The relevant distinction is not whether the governmental agency or employee acted at a planning or operational level but whether the action involved a permissible exercise of policy

judgment. *Gaubert*, 499 U.S. at 326. The employee need not make a conscious, explicit policy decision; he or she simply needs to make a decision that is susceptible to policy analysis. *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989). In addition, because the analysis turns on "the nature of the conduct," a court must separately examine the plaintiff's claims of negligence at each alleged level of conduct, such as design and construction. *Id.* at 1025, *quoting Varig*, 467 U.S. at 813.

In *Whisnant*, the court addressed plaintiff's injuries, which were attributable to the government's allowing toxic mold to proliferate in the commissary of a naval base for over three years. 400 F.3d at 1179. Because no statute, policy, or regulation prescribed a specific manner of commissary inspection or of dealing with mold, the court deemed the first prong of the test to be straightforward. *Id.* at 1181. So, as in this case, the court was called upon to determine whether the second prong of the *Berkovitz* test applied. The court reflected on the continuum of government actions:

> We have recently remarked upon the difficulty of charting a clear path through the weaving lines of precedent regarding what decisions are susceptible to social, economic, or political policy analysis. *See O'Toole [v. United States]*, 295 F.3d [1029,] 1035 [9th Cir. 2002]. Governmental actions can be classified along a spectrum, ranging from those "totally divorced from the sphere of policy analysis," such as driving a car, to those "fully grounded in regulatory policy," such as regulation and oversight of a bank. *Id.* (citing *Gaubert*, 499 U.S. at 325 n. 7, for those examples).

*Whisnant*, 400 F.3d at 1181.

Citing *Whisnant*, the Ninth Circuit characterized distinguishing which actions are protected under the second prong and which are not as a "particularly vexing determination for district and appellate courts alike." *Terbush*, 516 F.3d at 1129. No formulaic categories, flashpoints, or bright lines simplify the process. *Id.* at 1129-30.

### 1. No Maintenance Deficiencies

The Government argues that this Court need not even reach the analysis of the second prong since Plaintiffs have failed to allege any actual maintenance deficiencies. And despite a remand predicated on an inadequate record on maintenance, Plaintiffs have added nothing regarding maintenance deficiencies to the record on remand. Plaintiffs elect not to define

maintenance as the process of the upkeep of property or equipment as through repair but contend that the Government *maintains* the water treatment facility on Glacier Point simply by *operating* it on Glacier Point.

Plaintiffs cite no authority for their novel definition. In contrast, none of the maintenance cases that the Ninth Circuit examined in the course of contrasting routine maintenance and maintenance involving "considerable discretion that invokes policy judgment" considered the government to have maintained a facility simply by operating it. *See, e.g., Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007)(classifying snow removal from parking lot as routine maintenance); *Whisnant*, 400 F.3d at 1181 (removal of mold in meat department was routine maintenance); *Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001) (repairing roadside wall involved balancing multiple policy considerations); *Cope v. Scott*, 45 F.3d 445, 451(D.C.Cir. 1995) (concluding that because remedying road's inadequate skid resistance required either reduction of traffic load, demolition and re-paving with a different material, completely resurfacing the road, or milling the curve to create grooves in the surface, government would be required to weigh multiple public policy considerations to determine best course of action); *Baum v. United States*, 986 F.2d 716, 723-24 (4th Cir. 1993) (concluding that, where maintenance of bridge guardrails required total replacement, the same economic and political policy analysis was required as in original decision and construction of a substantial public facility); *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir. 1987) (repaving a road to precise specifications was routine maintenance). *See also O'Toole*, 295 F.3d at 1029 (finding lack of routine maintenance of irrigation canal when failure to clean out sediment and vegetation resulted in flooding).

The Government counters that Plaintiffs' creative definition of "maintenance" is merely re-labeling of Plaintiffs' previously dismissed design and operation claims. Disputing the Government's position is difficult, and since they have chosen to argue that the overflow is a negligent implementation of the system's design, Plaintiffs do not try. The Government's argument is persuasive. Plaintiffs assert no deficiencies that reasonably could be categorized as

anything commonly understood to be maintenance, such as repair, replacement, or cleaning. When it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief, the court may properly dismiss the claim. *Roberts*, 812 F.2d at 1177. Dismissal is appropriate here.

### 2. **Negligence**

Sidestepping the question of whether their maintenance claim merely restates the design and operation claims that the Circuit Court found to be protected by the discretionary function doctrine, Plaintiffs decline to present expert testimony regarding maintenance of the water system, asserting that wasting water by allowing it to overflow is an obviously negligent action, which is the same as defective maintenance. By focusing on negligence rather than whether maintenance of the water system involved a permissible exercise of policy judgment, Plaintiffs drop the ball on remand. Contending they are attacking the design's negligent implementation, not the decision to provide water on Glacier Point or the system's design, Plaintiffs argue that allowing the potable water tank to overflow in the course of operating the water system constitutes negligence since the water has the potential of causing rockfalls into populated areas of the park and since no policy can support the waste of water. Plaintiffs maintain that no expert testimony is required to establish that the wastewater system was negligently maintained because "[t]he Terbush case is not about that at all," and because their claim has to do with hydrology, rock mechanics, and erosion. At oral argument, Plaintiffs reiterated that the issue was not the water treatment system but whether the water got to a place where it caused rockfall.

"[N]egligence is simply irrelevant to the discretionary function inquiry." *Kennewick Irrigation District*, 880 F.2d at 1029. *See also In re The Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995); *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997); *Johnson v. United States, Dept. of Interior*, 949 F.2d 332, 340 (10th Cir. 1991). Questions of negligence and causation must abide resolution of the issue before this Court on remand: Does NPA's maintenance of the water facilities implicate policy considerations? Application of the discretionary function exception is a threshold jurisdictional issue that must be resolved before

the court conducts a negligence analysis. *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991); *Johnson*, 949 F.2d at 335. As the court observed in *Kennewick*, "[I]f the presence of negligence were allowed to defeat the discretionary function exemption, the exception would prove a meager shield indeed against tort liability." 880 F.2d at 1029. Although the effect may be harsh in a particular case, "[t]he discretionary function exemption applies even when the discretionary acts themselves constitute negligence." *Kiehn v. United States*, 984 F.2d 1100, 1108 (10th Cir. 1993), *quoting Flynn v. United States*, 902 F.2d 1524, 1530 (10th Cir. 1990). *See also Miller v. United States*, 710 F.2d 656, 662 (10th Cir.), *cert. denied*, 464 U.S. 939 (1983).

Because Plaintiffs fail to allege any deficiency in the maintenance of Glacier Point's wastewater systems, dismissal of their maintenance claim is appropriate. The Government's motion to dismiss for lack of subject matter jurisdiction is granted.

### IV.     **Assumption of Risk**

Because this Court lacks subject matter jurisdiction over this action, it lacks jurisdiction to address the Government's claim that by engaging in the sport of technical climbing, Peter Terbush assumed the risk of injury or death. *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912-13 (9th Cir. 1989). In any event, since this Court has dismissed Plaintiffs' last remaining claim, this issue is moot. *Id.*

### V.     **Conclusion**

Accordingly, it is ORDERED that

1. Defendant's motion to dismiss this action pursuant to F.R.Civ.P. 12(b)(1) is GRANTED;

2. Defendant's alternative motion for summary judgment pursuant to F.R.Civ.P. 56 is DENIED; and

3. The Clerk is directed to DISMISS this action for lack of subject matter jurisdiction.

IT IS SO ORDERED.

**Dated:     January 27, 2010**              /s/ Sandra M. Snyder
                              UNITED STATES MAGISTRATE JUDGE